## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES PAPIN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-2591 |
| JAMES E. TAYLOR and | : | |
| COWAN EQUIPMENT | : | |
| LEASING, LLC | : | |

### <u>MEMORANDUM</u>

**SURRICK, J**                                                                                    **July 2, 2024**

This personal injury action arises out of Plaintiff James Papin's car accident with

Defendant James Taylor ("Defendant Taylor"), who was driving a vehicle for his employer,

Cowan Equipment Leasing, LLC ("Defendant Cowan") (collectively "Defendants").  Plaintiff

alleges that Defendant Taylor hit Plaintiff's car from the rear, resulting in serious injuries to

Plaintiff.  Presently before the Court is Defendants' Motion to Dismiss.  Defendants argue that

Plaintiff's Complaint is barred by the statute of limitations for personal injury actions in

Pennsylvania.  In particular, they maintain that Plaintiff failed to make a good-faith effort to

timely effectuate service of original process.  We agree with Defendants.  Accordingly,

Plaintiff's claims are dismissed.

### I.       BACKGROUND

Plaintiff alleges that on March 16, 2021, he was operating his vehicle southbound on

Interstate 476 in Ridley Township, Delaware County, Pennsylvania. (Compl., ECF No. 1-1,

¶ 10.)  At the same time, Defendant Taylor was driving on the same road and in the same lane as

the Plaintiff.  (*Id.*, ¶ 11.)  Plaintiff alleges that Defendant Taylor failed to timely apply his brakes,

causing him to rear-end Plaintiff's vehicle.  (*Id.*)  Plaintiff claims that the accident was the result

of Defendant Taylor's negligence and that because of the collision, he suffered severe and serious injuries.  (*See id.*, ¶¶ 12, 13, 20.)  At the time of the incident, Defendant Taylor was operating a vehicle for his employer, Cowan Equipment Leasing, LLC.  (*Id.*, ¶ 5.)  As a result, Plaintiff claims that Defendant Cowan is liable for breaching its duty to properly supervise Defendant Taylor and for negligently hiring, entrusting, and training Defendant Taylor.  (*Id.*, ¶¶ 28, 29.)

On or around November 17, 2022, Robert Beltran, a third-party insurance claims administrator for Defendant Cowan, contacted Plaintiff's counsel, inquiring about a settlement. (Resp., Ex. A, ECF No. 5-2, at 8 (PDF Pagination).)  On March 14, 2023, Plaintiff initiated this personal injury lawsuit by filing a Writ of Summons in the Court of Common Pleas of Delaware County, Pennsylvania.  (Ntc. of Rem. Exs., ECF No. 1-1, at 12, 13 (ECF Pagination).) Settlement discussions occurred via email between Plaintiff's counsel and Beltran during April and May of 2023.  (Resp., Ex. A at 2-6.)  During these discussions, Plaintiff filed a *Praecipe* to Reissue the Writ of Summons on April 13 and May 12.  (Ntc. of Rem. Exs. at 12.)  He later filed another *Praecipe* to Reissue the Writ of Summons on June 9, 2023, and filed the Complaint the same day.  (*Id.*)

On May 23, 2023, Beltran asked about the statute of limitations and stated that he believed that it ran as of March 16, 2023.  (Resp., Ex. B, ECF No. 5-3, at 4 (PDF Pagination).) He also asked Plaintiff's counsel if he had filed suit, noting that he had not received a copy of the Complaint and that no one at Defendant Cowan had been served to the best of his knowledge. (*Id.*)  Plaintiff's counsel responded that he had filed the Writ of Summons, attached a copy thereof, and stated that this filing tolled the statute of limitations.  (*Id.*)  He further indicated that he had not served the Complaint because he believed that doing so would change the adjuster

and that he had been attempting to negotiate with Beltran in good faith, suggesting that he did not want to cut off negotiations with Beltran by filing the Complaint. (*See id.*) Beltran responded that it was his understanding that "service needs to be met in a certain number of days" and that he could continue negotiating, but that he was not "waiving defense." (*Id.* at 3.)

Settlement discussions continued thereafter. (*Id.* at 1-3.) On June 1, 2023, Beltran made an offer of $15,000. (*Id.* at 2.) On June 15, 2023, Beltran followed up, requesting a copy of the Complaint. (*Id.*) On June 21, 2023, Plaintiff's counsel stated that Plaintiff had rejected the settlement offer and attached a copy of the Complaint along with an Acceptance of Service, which he requested that Beltran execute. (*Id.* at 1.) The next day, Beltran stated that he could not accept service as it was outside the scope of his role as a claims adjuster for Defendant Cowan. (*Id.*) Plaintiff mailed the Complaint to the Defendants on June 23, 2023, and it appears that Defendant Taylor received the Complaint on June 26, 2023, and Defendant Cowan on June 29, 2023.[1] (Resp., Ex. C, ECF No. 5-4.)

Defendants subsequently removed the case to this Court on July 6, 2023, on the basis of our diversity jurisdiction under 28 U.S.C. § 1332. (Ntc. of Rem., ECF No. 1, at 6.) Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) and, in the alternative, Motion to Dismiss pursuant to Rule 12(b)(6) and Motion for a more definitive statement pursuant to Rule 12(e). (MTD.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss for insufficient service of process. When a motion to dismiss is filed pursuant to Rule 12(b)(5), "the

---

[1] In their Motion, Defendants state that "Defendant Cowan received a copy of the Complaint via certified mail" but that "[t]o Defendants' knowledge, Defendant Taylor has not been served." (MTD, ECF No. 4-1, at 3.) For the reasons discussed herein, this case does not turn on whether the Defendants were ultimately properly served, and whether Defendant Taylor actually received the Complaint.

party making the service has the burden of demonstrating its validity when an objection to the service is made." *Suegart v. U.S. Customs Serv.*, 180 F.R.D. 276, 278 (E.D. Pa. 1998).  State law governs the validity of service when a case is removed from state court to federal court.  *Staretz v. Walmart Stores E., L.P.*, No. 22-967, 2023 WL 2351885, at *2 (M.D. Pa. Mar. 3, 2023).  State law on the statute of limitations also applies.  *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015).

In Pennsylvania, "[a]n action may be commenced by filing . . . (1) a *praecipe* for a writ of summons, or (2) a complaint."  Pa. R. Civ. P. 1007.  Pennsylvania Rule of Civil Procedure 404 requires that "[o]riginal process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint" and may be done so "by mail in the manner provided by Rule 403."  Pa. R. Civ. P. 404.  In turn, Rule 403 requires that a copy of the process be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent and provides that service is complete upon delivery of the mail.  Pa. R. Civ. P. 403.  If the plaintiff cannot serve the defendant outside of Pennsylvania within ninety days, then the writ of summons can be extended any number of times if the plaintiff files a *praecipe* to reissue the writ.  Pa. R. Civ. P. 401(b).

## III.   DISCUSSION

### A.   Plaintiff Did Not Timely Make a Good-Faith Attempt to Serve Defendants

Prior to the Pennsylvania Supreme Court's decision in *Lamp v. Heyman*, 366 A.2d 882 (Pa. 1976), a plaintiff could toll the statute of limitation while undermining the purpose thereof "by initiating an action via the filing a writ prior to the expiration of the statute of limitations and continually reissuing that writ after the statute had run, all the while without serving notice on the defendant that the plaintiff had commenced an action."  *Gussom v. Teagle*, 247 A.3d 1046,

1055 (Pa. 2021). The *Lamp* Court put an end to the potential for abuse by plaintiffs that this practice allowed. Specifically, it held that a writ of summons shall remain effective to commence an action "only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Lamp*, 366 A.2d at 889. The Pennsylvania Supreme Court held in *Gussom* that "*Lamp* and its progeny require a plaintiff to make a good-faith effort in diligently and timely serving process on a defendant." 247 A.3d at 1057. Furthermore, the Court held that "a trial court should not punish a plaintiff by dismissing her complaint where she is able to establish that her improper but diligent attempts at service resulted in the defendant receiving actual notice of the commencement of the action." *Id.* Ultimately, a plaintiff must make a good-faith effort to serve the defendant within the time permitted for service under the Pennsylvania rules (e.g. thirty or ninety days) from the date the plaintiff last reissued the writ before the statute of limitations ran, and that good-faith attempt must provide the defendant with notice of the suit. *See Williams v. Wexford Health Sources, Inc.*, 199 F. Supp. 3d 917, 923-24 (E.D. Pa. 2016); *Senyk v. Ukrainian Catholic Archeparchy of Philadelphia*, No. 1163 EDA 2021, 2023 WL 127520, at \*4-5 (Pa. Super. Ct. Jan 9, 2023). "[T]he plaintiff carries an evidentiary burden to demonstrate that she met her good-faith mandate" and must present "credible evidence that she made this attempt at service." *Gussom*, 247 A.3d at 1057.

Here, Plaintiff has not demonstrated that he made a good-faith effort serve Defendants within ninety days from when he commenced the action. The original accident that led to this lawsuit occurred on March 16, 2021, and the Plaintiff filed the Writ of Summons on March 14, 2023, which was just before the expiration of the applicable two-year statute of limitations for personal injury lawsuits in Pennsylvania. (Compl., ¶ 10; Ntc. of Rem. Exs. at 12, 13.) *See also*

42. Pa, Cons. Stat. § 5524(2).  Accordingly, Plaintiff had until June 12, 2023, ninety days after he filed the Writ of Summons, to make a good-faith effort to serve Defendants in a manner that provided them actual notice of the suit.  However, even assuming that this would amount to a good-faith attempt at service, *see* Pa. R. Civ. P. 404, Plaintiff did not attempt to email the Complaint to Beltran until June 21, 2023.  (Resp., Ex. B at 1.)  Furthermore, he did not mail the Complaint to the Defendants—who were in Maryland and thus outside the Commonwealth— pursuant to Pennsylvania Rules 403 and 404 until June 23, 2023.  (Resp., Ex. C.)  The fact that Plaintiff reissued the writ three times after the statute of limitations expired but before the ninety days expired is of no consequence, as *Lamp* and its progeny ensure that this sort of practice cannot keep alive a writ that was filed before the statute of limitations expired and thereby extend the period for service.

Plaintiff argues that, historically, Pennsylvania has taken a more liberal approach to enforcing the service rules.  (Resp. at 5, citing *Alatrista v. Diamond Club*, 267 A.3d 1257, 1260 (Pa. Super. Ct. 2021).)  He further emphasizes that what amounts to a good-faith effort to serve should be determined on a case-by-case basis.  (*Id.*, citing *Senyk*, 2023 WL 127520, at *4.) Accordingly, while he acknowledges that communications with an insurer generally do not provide an alternative to service, he maintains that the circumstances of this case demonstrate that he made a good-faith attempt to provide the Defendants actual notice of the lawsuit through the course of settlement negotiations, in particular by providing Beltran with a copy of the Writ of Summons.  (Resp. at 7-8.)

Plaintiff misconstrues the standard he must meet: Plaintiff does not need to show that he made a good-faith effort to provide the Defendants notice of his suit; rather, he must show that he made a good-faith effort to actually serve the Defendants in compliance with the Pennsylvania

Rules of Civil Procedure. *See Gussom,* 247 A.3d at 1057.  Only after it is demonstrated that a good-faith effort was made does the court consider if such a good-faith effort provided the defendant(s) with actual notice of the suit. *See id.*  And while it is true that what amounts to a good-faith effort to serve a defendant is a case-specific inquiry, *see Senyk*, 2023 WL 127520, at *4; *Englert v. Fazio Mech. Servs., Inc.*, 932 A.2d 122, 124 (Pa. Super. Ct. 2007), as Plaintiff acknowledges, precedent clearly establishes that communication between a plaintiff and the defendant's insurer is insufficient to constitute a good-faith attempt at service. *See Ferrara v. Hoover*, 636 A.2d 1151, 1153 (Pa. 1994) ("We find no merit in the contention communication between [plaintiff] and [the defendants'] insurance adjuster serves as a substitute for actual service of process."); *Moses v. T.N.T. Red Star Exp.*, 725 A.2d 792, 798 (Pa. Super. Ct. 1999) (holding that providing notice to defendants' insurance carrier of an impending suit "does not excuse [plaintiff's] failure even to attempt to effectuate actual service of the actual writ on the [defendants]"); *Phillips v. Triple G. Farms, Inc.*, 2019 WL 5401109, at *4 (Pa. Super. Ct. Oct. 22, 2019).[2]

Accordingly, Plaintiff's attempts to distinguish the facts of this case from those in *Lamp* and *Phillips* are to no avail.  (*See* Resp. at 7-10.)  Whether or not Plaintiff's efforts to provide the Defendants' notice of his suit were more diligent or assiduous than those of the plaintiffs in *Phillips* or *Lamp*, and regardless of the fact that he served the Defendants a shorter time after the ninety-day period expired than those plaintiffs, it remains the case that he has presented no credible evidence to demonstrate that he made a good-faith effort to actually serve the

---

[2] Plaintiff suggests that the fact that Beltran is an independently contracted third-party claims administrator, not an insurance adjuster, distinguishes the case at hand from this precedent.  (Resp. at 7-8.)  However, he presents no argument as to why this distinction is relevant.  At any rate, we do not see how either communication with a defendant's third-party claims administrator or insurance adjuster amounts to an attempt to initiate actual service.

Defendants before June 12, 2023, ninety days after he filed the Writ of Summons.[3]  He had the

burden to do so, and he has failed to meet this burden.  *See Suegart*, 180 F.R.D. at 278; *Gussom*,

247 A.3d at 1057.  Therefore, Plaintiff has not satisfied the statute of limitations.

**B.     Equitable Estoppel is Not Justified**

Plaintiff also argues that Defendants should be precluded from asserting a statute of

limitations defense under the doctrine of equitable estoppel.  However, Plaintiff has presented no

evidence that the Defendants engaged in any fraud or concealment in order to induce him not to

attempt service in a timely fashion.

The doctrine of equitable estoppel "recognizes that an informal promise implied by one's

words, deeds or representations which leads another to rely justifiably thereon to his own injury

or detriment, may be enforced in equity."  *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502,

503 (Pa. 1983).  "[I]f through fraud or concealment the defendant causes the plaintiff to relax his

vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the

[statute of limitations]."  *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964).

"[U]nintentional deception" can constitute fraud in this context.  *Id.* at 476.  "The burden of

proving the existence of such fraud or concealment is upon the asserting party by evidence that is

clear, precise and convincing."  *Id.* at 475.  "It is also well established that mere negotiations

toward an amicable settlement afford no basis for an estoppel, nor do mistakes,

---

[3] Relying on the standard articulated in *Lamp*, Plaintiff also argues that his conduct "demonstrates a lack of intent to stall or delay the proceedings" or "stall the machinery of justice."  (Resp. at 9; *see also* Resp. at 6, citing *Lamp*, 366 A.2d at 889.)  However, as articulated in *Gussom*, this is no longer the operative standard used by the Pennsylvania Supreme Court.  Plaintiff also maintains that, pursuant to 28 U.S.C. § 1448 and Federal Rule of Civil Procedure 4(m), "if service is found to be insufficient, the Court is statutorily required to allow Plaintiff to perfect service within 90 days of the date of removal."  (Resp. at 11.)  However, the issue in this case is not whether Plaintiff's attempts at service were sufficient.  The issue is whether Plaintiff made a good-faith *attempt* to serve Defendants within a specific timeframe that ended before this case was removed.  We cannot go back in time to give Plaintiff a second chance at doing this.  Accordingly, allowing Plaintiff to perfect service now would serve no purpose.

misunderstandings or lack of knowledge in themselves toll the running of the statute." *Id.* The court must consider all the circumstances of the case when evaluating whether there is a basis for estoppel. *See id.* at 476.

Plaintiff maintains that "[r]ather than engage in good-faith negotiations, Defendants purposely misled Plaintiff about their intentions to negotiate in an attempt to delay and prevent the instant litigation from occurring." (Resp. at 10.)  Yet, precisely the opposite is represented in Defendant Cowan's agent's, Beltran's, email correspondence with Plaintiff's counsel.  On May 23, 2023, Beltran brought up the statute of limitations—the first time the issue was raised by either party—and explicitly stated that Defendants were not "waiving defense." (Resp., Ex. B at 3.)  While this is somewhat ambiguous, in context it is clear that Beltran meant that Defendants would not waive their statute of limitations defense.  (*See id.*)  The fact that the parties had engaged in negotiations and Beltran never mentioned the statute of limitations before this point provides no basis for an estoppel.  *See Nesbitt*, 204 A.2d at 475.  Regardless, Plaintiff had ample time after this correspondence to simply make a good-faith attempt to serve the Complaint before the ninety-day period for service expired on June 12, 2023, but failed to do so.

Nor is estoppel justified by Plaintiff's counsel's mistaken statement that his filing of the Writ of Summons alone, without any attempt of service, tolled the statute of limitations, *see id.* ("mistakes, misunderstandings or lack of knowledge in themselves [do not] toll the running of the statute"), or by his statement that he believed that serving the Complaint would change the adjuster and thus cut off communication and negotiation with Beltran.  In fact, Beltran responded to these statements by noting that while he did not have much experience working in Pennsylvania, it was still his understanding that service ultimately needed to be completed within a certain timeframe.  (Resp., Ex. B at 3.)  Accordingly, Plaintiff has presented no evidence that

the Defendants, through Beltran or otherwise, engaged in fraud or concealment, whether intentional or unintentional, to induce Plaintiff to believe that Defendants would not raise a statute of limitations defense.

Plaintiff contends that two cases in which Pennsylvania courts ruled that the defendant was estopped from pleading a statute of limitations defense dictate the same result here. First, Plaintiff directs our attention to *Nesbitt* itself. In that case, the plaintiff, not her counsel, was directly informed by one of the defendant's insurance adjusters "not to worry about her claim because the case would be continued by the adjustment agency in her best interests." *Nesbitt*, 204 A.2d at 475. Another of the defendant's adjusters also implied to her that it was unnecessary to hire an attorney because the defendant's adjuster had not yet refused to pay her, even though it was the opinion of the adjuster's employer that the defendant was not liable, and that the insurer could not pay a settlement to her until the full extent of her injuries were known. *Id.* at 475-76. No adjuster ever contacted the plaintiff again and the statute of limitations ran. *See id.* at 476. Plaintiff also points to *Colbert v. Boazzo*, 45 Pa. D. & C. 4th 370, 374-75 (Com. Pl. 2000), where the court found that the defendant's insurance adjuster made representations that led the plaintiff's counsel to reasonably believe that defendant would agree to toll the statute of limitations.

Neither *Nesbitt* nor *Colbert* support Plaintiff's case, as the circumstances here are distinct from those cases. Here, Defendant Cowan's claims administrator, Beltran, communicated with Plaintiff's counsel, who by his own admission had "been doing [personal injury] work for almost 20 years," not a *pro se* plaintiff who had not yet filed a Writ of Summons. (Resp., Ex. B at 4.) And, as discussed, Beltran explicitly stated that he would not waive the statute of limitations defense. He never induced Plaintiff's counsel or Plaintiff not to pursue his claim, like the

adjusters in *Nesbitt*, nor did he make any statements that could be reasonably interpreted as an agreement to toll the statute of limitations, as in *Colbert*.  Therefore, estopping Defendants from asserting a statute of limitations defense is not justified here.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(5) will be granted and Plaintiff's claims will be dismissed.  Accordingly, we need not address Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and Motion for a more definitive statement pursuant to Rule 12(e), as both are moot.

An appropriate Order follows.

**BY THE COURT:**

*/s  R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**